## <u>JOINT STIPULATION OF SETTLEMENT AND RELEASE</u>

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and among Timothy Aviles ("Aviles"), Bradley Durbin ("Durbin"), Stanla Lindor ("Lindor"), Hakim Muhammad ("Muhammad"), Byron Meyer ("Meyer"), and Joseph Sinclair ("Sinclair"), individually and on behalf of the classes of individuals that they seek to represent (referred to collectively as "Plaintiffs"), and Defendant Hard Rock Cafe International (USA), Inc. and its respective past and present affiliates and related entities, parent and subsidiary corporations, divisions, predecessors, successors, and assigns that have owned or managed the restaurant located at 1501 Broadway, New York, New York, and each of its or their past and present officers, directors, trustees, fiduciaries, insurers, owners, investors, attorneys, administrators, employees, agents, representatives and shareholders in their individual and official capacities (referred to collectively as "HRC" or "Defendant").

## RECITALS

**WHEREAS**, on or about December 11, 2017, Aviles, Durbin, and Lindor filed a proposed Class and Fair Labor Standards Act (FLSA) Collective Action Complaint on behalf of themselves and other allegedly similarly situated current and former servers at the Times Square location of HRC located in New York City, New York in a case captioned *Aviles et al. v. Hard Rock Cafe International (USA), Inc.*, Case No. 17-cv-9723-LTS-SN, pending in the United States District Court for the Southern District of New York, alleging, among other things, violations of the FLSA and the New York Labor Law (NYLL) for the alleged failure to pay unpaid wages and overtime compensation with respect to meal breaks and pre-shift activities, failure to pay spread of hours compensation, failure to provide wage notices, the unlawful withholding of gratuities and service charges, and the failure to pay uniform maintenance pay at the HRC restaurant located at 1501 Broadway, New York, New York (the "Litigation");

**WHEREAS**, since the filing of the Litigation, Muhammad, Meyer, and Sinclair opted into the Litigation;

**WHEREAS**, HRC denies all of the allegations in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

**WHEREAS**, on September 24, 2018, the Parties and their counsel participated in a settlement conference before the Honorable Magistrate Judge Sarah Netburn;

**WHEREAS**, the Parties engaged in further settlement discussions over the course of several weeks following the settlement conference and reached an agreement resolving this Litigation; and

**WHEREAS**, without admitting or conceding any liability or damages whatsoever, HRC has agreed to settle the Litigation to avoid the burden, expense, and uncertainty of continuing the Litigation;

**WHEREAS**, Class Counsel (as defined below) analyzed and evaluated the merits of the claims made against HRC in the Litigation, conducted interviews with putative class and collective members, obtained and reviewed documents relating to HRC's compensation policies, and analyzed payroll data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of Plaintiffs;

**WHEREAS**, it is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims that have been brought in the pending Litigation or that reasonably arise out of the facts alleged in the pending action which exist between them;

**NOW, THEREFORE,** in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for in this Agreement, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.   DEFINITIONS

Unless otherwise noted in this Agreement, capitalized terms set forth in this Agreement shall have the meanings ascribed to them below.

**1.1    Acceptance Period.** "Acceptance Period" shall mean the ninety (90) day period that each Class Member has to sign and cash a Settlement Check, beginning with the date the Claims Administrator mails the Settlement Check to a Class Member.

**1.2    Claim Form.** "Claim Form" shall mean the Court-approved claim form and release that Class Members must execute and return to receive, subject to the Court's Final Approval, their share of the Net Settlement Fund.

**1.3    Claim Period**. "Claim Period" shall mean the period for filing Claim Forms, which shall be from the date of the initial mailing of the Notice and Claim Form until forty-five (45) days thereafter.

**1.4    Claims Administrator**. "Claims Administrator" shall mean Simpluris, Inc.

**1.5    Class Counsel or Plaintiffs' Counsel.** "Class Counsel" and "Plaintiffs' Counsel" shall mean Lloyd Ambinder and Caroline Turner of and including Virginia & Ambinder LLP with an address of 40 Broad Street, New York, New York 10004.

**1.6    Class Members.** "Class Members" shall mean the FLSA Collective Action Members and all Rule 23 Class Members.

**1.7    Class Member List**. "Class Member List" shall mean a list of all Class Members

2

identified by: (i) name; (ii) last known address; (iii) dates of employment during the Relevant Time Period; and (iv) social security numbers, if available, contained in a confidential document that HRC shall provide to Class Counsel and the Claims Administrator to effectuate settlement, and may not be copied, disseminated, or used, in part or whole, for any other purpose other than to effectuate this settlement.

**1.8    Court.**  "Court" shall mean the United States District Court for the Southern District of New York.

**1.9    Days.**  "Day" or "days" shall mean calendar days unless otherwise stated or modified by the word "business."

**1.10    Defendant's Counsel or HRC's Counsel.**  "Defendant's Counsel" or "HRC's Counsel" shall mean Amy J. Traub and Saima Z. Sheikh of Baker & Hostetler LLP with an address of 45 Rockefeller Plaza, New York, New York 10111.

**1.11    Effective Date.**  "Effective Date" of the Settlement Agreement shall mean the last of the following dates:

> **A.**  If there is no appeal of the Court's Order Granting Final Approval of the Settlement, the date after the time to file an appeal has expired; or

> **B.**  If there is an appeal of the Court's Order Granting Final Approval of the Settlement, the day after all appeals are resolved in favor of final approval.

**1.12    Form 1099.**  "Form 1099" means the IRS Form 1099 to be issued to each Class Member by HRC or its agent.

**1.13    Fairness Hearing.**  "Fairness Hearing" shall mean the hearing before the Court relating to the Motion for Final Approval of this settlement.

**1.14    Final Approval Order.**  "Final Approval Order" shall mean the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the Settlement Checks and Service Awards, and Dismissal of the Litigation.

**1.15    FLSA Collective Members.**  "FLSA Collective Members" shall mean all hourly employees currently or formerly employed by HRC as a server at its Times Square location in New York City, New York between December 11, 2014 and the date of the Preliminary Approval Order who worked as a server in that timeframe, and who endorse their Settlement Checks or have filed a separate consent to join the lawsuit and then endorse their Settlement Checks.

4810-7651-8532.5
4846-6811-9685.1

**1.16   Gross Settlement Amount. "**Gross Settlement Amount" shall mean the maximum aggregate amount that can be paid by HRC pursuant to this Agreement and includes Service Awards, Claims Administrator fees and expenses, attorneys' fees, expenses, and costs, and other professional fees, expenses, and costs. Under no circumstances shall the Gross Settlement Amount exceed Three Hundred Seventy-Five Thousand Dollars ($375,000.00), regardless of the exact number of Class Members.

**1.17   Named Plaintiffs**. "Named Plaintiffs" shall mean Aviles, Durbin, and Lindor.

**1.18   Net Settlement Fund.**  "Net Settlement Fund" shall mean the remainder of the Gross Settlement Amount after deductions for: (1) Court-approved Claims Administrator's fees and expenses; (2) Court-approved attorneys' fees, expenses, and costs, including other professional fees, expenses, and costs; and (3) Court-approved Service Awards to certain Plaintiffs.

**1.19   Notice or Notices.**  "Notice" or "Notices" shall mean the Court-approved Notice of Proposed Settlement of Class Action and Collective Action Litigation and Fairness Hearing and the Court-approved Notice of Proposed Settlement of FLSA Collective Action Litigation and Fairness Hearing. Notices will be provided in English.

**1.20   Objector.**  "Objector" shall mean any Class Member who properly files an objection to this Agreement, and it does not include any individual who opts out of this Agreement.

**1.21   Opt-in Plaintiffs. "**Opt-in Plaintiffs" shall mean those individuals who have opted into the collective action in this Litigation pursuant to 29 U.S.C. § 216(b) by having returned and filed Consent to Join forms with the Class Administrator, including but not limited to Meyer, Muhammad, and Sinclair.

**1.22   Opt-out Period.** The "Opt-out Period" shall mean forty-five (45) days after the initial mailing of the Notice and Claim Form to Class Members or, where applicable, forty-five (45) days after any second mailing of the Notice to any Class Members to whom the original mailing was returned as undeliverable.

**1.23   Opt-out Statement.**  An "Opt-out Statement" shall mean a written signed statement by a Rule 23 Class Member who, in accordance with Section 3.5 of this Agreement, has decided to opt out of, and not be included in, this settlement.

**1.24   Parties.** The "Parties" shall mean Plaintiffs, HRC, and the Class Members, collectively.

**1.25   Plaintiffs.**  "Plaintiffs" shall mean the Named Plaintiffs, Opt-in Plaintiffs, and the Class Members, collectively.

**1.26   Relevant Time Period.** The "Relevant Time Period" shall mean servers currently or formerly employed at the Times Square location of HRC in New York City, New York at any time between December 11, 2011, and December 11, 2017.

4810-7651-8532.5
4846-6811-9685.1

**1.27   Preliminary Approval Order.  "**Preliminary Approval Order" shall mean the Order entered by the Court preliminarily approving, among other things, the terms and conditions of this Agreement, the manner and timing of providing Notices to the Class Members, and the time period for opt-outs and objections with respect to the settlement.

**1.28   Releasees.**  "Releasees" shall mean HRC and its current and former affiliates, related entities, parent and subsidiary companies, successors and assigns that have owned or managed the restaurant location at 1501 Broadway, New York, New York and each and all of their current and former officers, directors, members, managers, partners, owners, shareholders, investors, agents, attorneys, employees, fiduciaries, predecessors, successors, assigns, and representatives, in their individual or representative capacities.

**1.29   Rule 23 Class Members.**   "Rule 23 Class Members" shall mean all hourly employees currently or formerly employed by HRC as servers at its Times Square location in New York City, New York between December 17, 2011, and December 11, 2017, and who do not timely submit Opt-out Statements.

**1.30   Service Awards**. "Service Awards" shall mean the amount of money the Named Plaintiffs may seek as compensation for the time and effort they expended in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise or knowledge), any other burdens they sustained in lending themselves to the prosecution of their claims, and the ultimate recovery.

**1.31   Settlement Checks.**  "Settlement Checks" shall mean the checks issued to Class Members from the Net Settlement Fund by the Claims Administrator as calculated by the Claims Administrator or its agent for their share of the Net Settlement Fund calculated in accordance with this Agreement.

**2.     INITIAL PROCEDURAL RULES**

**2.1   Binding Agreement.**  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2   Retention of Claims Administrator**. Within five (5) days after the execution of this Agreement, Plaintiffs' Counsel, in consultation with Defendant's Counsel, shall engage a Claims Administrator to mail Notices to Class Members and administer the settlement. The Claims Administrator shall be responsible for:

**A.** Preparing, printing, and disseminating the Notices and Claim Forms to the Class Members, including notices required pursuant to the Class Action Fairness Act;

**B.** Copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party;

4810-7651-8532.5
4846-6811-9685.1

**C.** Promptly furnishing to counsel for the Parties copies of any Claim Forms, Opt-out Statements, objections, or other written or electronic communications from the Class Members which the Claims Administrator receives;

**D.** Keeping track of Claim Forms and Opt-out Statements including maintaining the original mailing envelope in which the request was mailed;

**E.** Mailing all required tax forms to Class Members and to Class Counsel as provided herein;

**F.** Setting up the Net Settlement Fund to be used for the distribution of all Settlement Checks to Class Members, Plaintiffs' Counsel, the Claims Administrator, and Service Awards to Plaintiffs;

**G.** Calculating the amount of each Class Member's Settlement Check;

**H.** Calculating the employer-side payroll taxes required pursuant to the settlement;

**I.** Calculating and paying each Class Member's taxes and preparing appropriate tax forms for HRC and for each Class Member;

**J.** Issuing and mailing the Settlement Checks to Class Members;

**K.** Responding to inquiries from Class Members regarding settlement procedures;

**L.** Referring to Plaintiffs' Counsel and HRC's Counsel all inquiries from Class Members not within the Settlement Claims Administrator's duties;

**M.** Promptly apprising Class Counsel and HRC's Counsel of the activities of the Claims Administrator;

**N.** Maintaining adequate records of its activities, including the dates of the mailing of Notices, returned mail and other oral, written, or electronic communications (including attempted communications) with the Class Members;

**O.** Confirming in writing to Plaintiffs' Counsel and HRC's Counsel of its completion of the administration of the settlement;

**P.** Timely responding to communications from the Parties or their counsel; and

**Q.** Such other tasks that the Parties mutually agree upon.

The Claims Administrator's fees shall be paid from the Gross Settlement Amount. In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Claims Administrator shall certify jointly to Plaintiffs' Counsel and to HRC's Counsel the following: (a) a list of all Class Members who filed timely objections; (b) a list of all Class Members who submitted valid Opt-out Statements at any time during the Opt-out Period; and (c) a

6

list of all Class Members who timely submitted valid Claim Forms during the Claim Period. Throughout the period of the claims administration, the Claims Administrator will provide to the Parties periodic written reports not less than monthly and upon request by either Party regarding the status of any aspect of the claims administration process. The Parties will have equal access to the Claims Administrator throughout the claims administration period. Plaintiffs' Counsel and HRC's Counsel agree to provide the Claims Administrator with all information necessary to reasonably assist it to perform its duties.

**2.3    Preliminary Approval of the Settlement.** The Parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order. On or before January 3, 2019, the Parties will jointly submit to the Court a Motion for Preliminary Approval of the Class Action Settlement and for Conditional Certification of the Settlement Class ("Preliminary Approval Motion"). In connection with the Preliminary Approval Motion, the Parties will seek an Order, among other things: (a) approving as to form and content a proposed Notice of Settlement of the Class Action and Collective Action Lawsuit and Fairness Hearing, which is appended as Exhibit A; (b) approving a proposed Consent to Join Settlement, Claim Form and Release, which is appended as Exhibit B; (c) scheduling a final approval hearing on the question of whether the settlement, including payment of attorneys' fees and costs and Service Awards to certain Plaintiffs, should be finally approved as fair, reasonable, and adequate as to the Class Members; (d) directing the mailing of the Notice and providing the Class Members with the opportunity to submit Opt-out Statements and written objections; (e) preliminarily approving estimated costs of administration of the settlement; and (f) setting dates for the submission of Claim Forms, Opt-out Statements, objections to the settlement, and a Fairness Hearing.

**2.4    Denial of Preliminary Approval of the Settlement**. If the Court denies the Motion for Preliminary Approval, the Parties will jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement addressing the issues raised by the Court, provided that HRC shall not be required to pay any additional sums. Should reconsideration or the Parties' attempt to secure Court approval of a renegotiated settlement be denied, the case will proceed as if no settlement had been attempted, and this Agreement and the circumstances leading to it will not be admissible as evidence in the Litigation, and HRC will retain the right to contest the Litigation in all respects. In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

**2.5    Notices to Class Members and Procedure for Filing Claim Forms.**

> **(A)**    Within fourteen (14) days of the Court's issuance of a Preliminary Approval Order, HRC will provide to Class Counsel and to the Claims Administrator, in electronic form, the Class Member List. All information provided on the Class Member List will be treated as confidential information by Plaintiffs' Counsel and the Claims Administrator and will not be used for any purpose other than to effectuate the terms of the settlement.

> **(B)**    Within thirty (30) days of the Court's issuance of the Preliminary Approval Order, the Claims Administrator will mail to all Class Members, via Certified,

First Class United States Mail, postage prepaid, in a plain envelope, the Court-approved Notice of Proposed Settlement and Fairness Hearing and Claim Form, which will inform Class Members about this settlement and will also advise them of the opportunity to object to, opt out of, do nothing, submit a Claim Form, and/or appear at the Fairness Hearing.

**(C)**    In particular, the Claim Form will instruct Class Members that in order to receive a settlement payment, Class Members must timely submit a valid Claim Form during the Claims Period and may not opt out of the settlement.

**(D)**    In order to be a valid Claim Form, the Claim Form must be completed as instructed on the Claim Form, signed, dated, and emailed, faxed or mailed via First-Class United States Mail to the Claims Administrator at the address indicated on the Claim Form such that it is postmarked or received by the Claims Administrator within the Claim Period.

**(E)**    A Class Member who timely submits an invalid Claim Form will be notified of such by the Claims Administrator, and provided with fifteen (15) days following the date of notification by the Claims Administrator of the invalid Claim Form to cure an invalid Claim Form by emailing, faxing or  mailing it via First-Class United States Mail to the Claims Administrator such that it is postmarked or received by the Claims Administrator within the fifteen (15) day period.

**(F)**    The Claim Period shall be extended by no more than twenty-one (21) days for certain Class Members in the event of a Class Member's showing of *bona fide* extraordinary circumstances (such as military service, hospitalization, or documented proof of change of address). In such an event, the Claim Form must be emailed, faxed, or mailed via First-Class United States Mail to the Claims Administrator such that it is postmarked or received by the Claims Administrator within the twenty-one (21) day period.

**(G)**    Other than the limited circumstances described in Paragraphs 2.5(F) and 2.5(G) and unless otherwise agreed to by the Parties or authorized by the Court, any Class Member who fails to timely submit a valid Claim Form on or before the end of the Claim Period will not be eligible to receive a settlement payment from the Net Settlement Fund.

**(H)**    Class Members who do not timely submit valid Claim Forms will be said to have released their state wage and hour claims through the preliminary approval date of this Agreement unless they have timely submitted valid Opt-out Statements.

**(I)**    The Claims Administrator will stamp the postmark date on the original Claim Form that it receives. The Claims Administrator will retain the stamped originals of all Claim Forms and originals of all envelopes accompanying Claim Forms in its files until such time as it is relieved of its duties and responsibilities under this Agreement. The Claims Administrator shall  e-

4810-7651-8532.5
4846-6811-9685.1

mail copies of the Claim Forms to counsel for the Parties on the last day of the Claim Period. Within fourteen (14) days after the close of the Claim Period, the Claims Administrator shall provide a complete list to Class Counsel and counsel for HRC of all Class Members who have timely submitted valid Claim Forms.

**2.6   Rule 23 Class Member Opt-outs.**

**(A)**   Rule 23 Class Members who choose to opt out of the settlement as set forth in this Agreement must submit a written, signed Opt-out Statement to the Claims Administrator stating that he or she is opting out of the settlement, and include his or her name, address, and telephone number and an Opt-Out Statement indicating his or her intention to opt out of the settlement such as, "I opt out of the Hard Rock Cafe wage and hour Settlement."

**(B)**   To be valid, an Opt-out Statement must be e-mailed, faxed, or mailed via First-Class United States Mail to the Claims Administrator such that it is postmarked or received within the Opt-out Period, which shall be forty-five (45) days after the mailing of the Notice to the Class Member.

**(C)**   The Claims Administrator shall keep accurate records of the dates on which it sends Notices to Class Members and receives all Opt-out Statements.

**(D)**   The Claims Administrator will stamp the postmark date on the original Opt-out Statement that it receives. The Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as it is relieved of its duties and responsibilities under this Agreement. The Claims Administrator shall provide to the Parties, upon request, copies of the Opt-out Statements and said envelopes.

**(E)**   The Claims Administrator will send a final list of all Opt-out Statements to Plaintiffs' Counsel and HRC's Counsel before the Fairness Hearing.

**(F)**   Any Rule 23 Class Members who do not properly and timely submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be subject to the releases set forth herein, will be issued a settlement payment if a valid Claim Form is filed, and will be bound by the Final Order and Dismissal with Prejudice. HRC shall have no obligation to pay any Class Member who timely submits a valid Opt-Out Statement as set forth in this Agreement. If the number of Class Members who submit Opt-out Statements exceeds 10% of the Class Members, HRC reserves the right to withdraw from the settlement. Class Members who submit timely and valid Opt-out Statements are not bound by or subject to this Agreement.

**2.7   Objections to Settlement.**

**(A)**  Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in a written statement ("Written Objection"). To be considered, the Written Objection must be emailed, faxed or mailed via First-Class United States Mail to the Claims Administrator such that it is post-marked or received by forty-five (45) days after the initial mailing of Notice to the Class Member. The Written Objection must include (1) words that generally convey an objection to the settlement such as, "I object to the Hard Rock Cafe wage and hour class settlement"; (2) a statement, with reasonable specificity, all grounds for the objection receive notification that the objection must be corrected or it will ; (3) the name, address, email address and telephone number for the Class Member making the objection; and (4) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class. The Claims Administrator will stamp each original Written Objection with the date that it was received by the Claims Administrator and will send copies of each Written Objection to counsel for the Parties by e-mail delivery no later than three (3) days after receipt of the Written Objection.

**(B)**  An Objector has the right to appear at the Fairness Hearing, either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her Written Objection at the time that he or she submits written objections. An Objector may withdraw his or her objections at any time. Unless otherwise permitted by the Court, no Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her Written Objections. An Objector is a Class Member and an objection does not constitute the filing of an Opt-out Statement. A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement or speak at the Fairness Hearing, unless otherwise permitted by the Court.

**(C)**  The Parties may file with the Court written responses to any Written Objections no later than three (3) business days before the Fairness Hearing.

**2.8    Fairness Hearing, Final Approval of Settlement, and Dismissal with Prejudice.** The Parties will work together, diligently and in good faith, to expeditiously obtain a Final Approval Order with respect to the Settlement and dismissal of the Litigation with prejudice. At the Fairness Hearing, the Parties will jointly request that the Court, among other things: (a) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (b) approve Service Awards to the Named Plaintiffs to be paid out of the Gross Settlement Amount; (c) order the Claims Administrator to distribute the Settlement Checks to the Class Members; (d) order the attorneys' fees, expenses, and costs to be paid to Plaintiffs' Counsel out of the Gross Settlement Amount; (e) order the Administrator's fees and expenses to be paid out of the Gross Settlement Amount; (f) enter judgment and dismiss the Litigation with prejudice; (g) permanently enjoin all Class

4810-7651-8532.5
4846-6811-9685.1

Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement; and (h) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated by the Agreement. The Parties agree that HRC's stipulation to collective action and class action certification is for settlement purposes only and is in no way an admission that collective action or class action certification is proper. If, for any reason, the Court does not grant final approval of the Agreement, any such stipulation shall be void, HRC reserves the right to oppose collective action and class action certification, and neither this Agreement nor any ancillary documents shall be admissible or offered into evidence in the Litigation for any purpose whatsoever. The Court will retain jurisdiction over the Litigation following its entry of judgment and dismissal until ten (10) days after the end of the Acceptance Period. HRC will notify the Court of the expiration of the Acceptance Period.

**2.9     Effect of Failure to Grant Final Approval.** In the event the Court fails to enter the Final Approval Order or if such approval does not become final as contemplated herein, the Parties shall resume the Litigation unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying Final Approval of the Settlement; or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. In the event that any reconsideration or appellate review is denied, or a mutually agreed-upon settlement is not approved:

    **(A)**     The Litigation will proceed as if no settlement had been attempted. In that event, the class certified for purposes of settlement shall be decertified, and HRC may contest whether this Litigation should be maintained as a class action or collective action and contest the merits of the claims being asserted by Plaintiffs in this Action. In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

    **(B)**     The Claims Administrator will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by the Claims Administrator via First Class U.S. Mail, postage prepaid, to the addresses used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing with the Claims Administration cost to be borne equally by the parties

**3.     SETTLEMENT TERMS**

**3.1     Settlement Payment**.

    **(A)**     HRC agrees to pay Three Hundred Seventy-Five Thousand Dollars ($375,000.00) (the "Gross Settlement Amount"), which shall fully resolve and satisfy: (a) any Court-approved attorneys' fees, costs, and expenses;

4810-7651-8532.5
4846-6811-9685.1

(b) all settlement amounts to be paid to Class Members; (c) any Court-approved Service Awards to certain Plaintiffs; and (d) any fees and costs related to the administration of the settlement by the Claims Administrator. HRC will not be required to pay more than a maximum total amount of Three Hundred Seventy-Five Thousand Dollars ($375,000.00) under the terms of this Agreement.

**(B)**   Within seven (7) days after the Effective Date of this Agreement, HRC shall wire transfer the entire Gross Settlement Amount into an escrow account established by the Claims Administrator. Within ten (10) days following deposit of the Gross Settlement Amount into the escrow account by HRC, the Claims Administrator will distribute the money in the Escrow Account by making the following payments:

**(1)**   Paying Class Counsel's Court-approved attorneys' fees, expenses, and costs as described in Section 3.2;

**(2)**   Paying the Claims Administrator's Court-approved fees and costs as described in Section 3.3;

**(3)** Paying the Named Plaintiffs the Court-approved Service Awards as described in Section 3.4; and

**(4)** Paying Class Members who timely submit a valid Claim Form and who do not timely submit a valid Opt-out Statement their portion of the Net Settlement Fund as described in Section 3.5. Class Members who are eligible to cure an invalid or untimely Claim Form pursuant to Sections 2.5(F) and 2.5(G) of this Agreement but who fail to timely cure same will receive no settlement payment.

**(C)**   The Class Members will have ninety (90) days from the date of the mailing of Settlement Checks by the Claims Administrator to endorse and cash their Settlement Checks (the "Acceptance Period"). Class Members will be informed of the Acceptance Period in the Notice and on the Settlement Checks. If any Class Members who have submitted Claim Forms do not cash their checks within ninety (90) days after mailing of the checks by the Claims Administrator, their Settlement Checks will be void and a stop-payment will be placed.  In such event, those Class Members will be deemed to have waived irrevocably any right in or claim to a settlement share, but this Agreement nevertheless will be binding upon them.

**(D)**   Should there remain any residual amounts of the Net Settlement Fund after all payments to eligible Class Members are made under this Agreement, including any Settlement Checks and Service Award Checks that are uncashed after the Acceptance Period and unapproved Service Awards and attorneys' fees, expenses, and costs, such residual amounts shall revert to HRC.  Any costs associated with administering the residual (*e.g.,* bank stop pay charges) will be deducted from the residual amount.

4810-7651-8532.5
4846-6811-9685.1

**3.2    Settlement Amounts Payable as Attorneys' Fees, Expenses, and Costs**.

**(A)**    At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees, expenses, and costs in an amount not to exceed one-third (1/3) of the Gross Settlement Amount, inclusive of actual litigation costs and expenses, to be paid from the Gross Settlement Amount. The approved attorneys' fees and costs shall be paid by the Claims Administrator from the Gross Settlement Amount. HRC shall not oppose such application. After payment of the Court-approved attorneys' fees award and costs, HRC shall have no additional liability for Class Counsel's attorneys' fees, expenses, and costs.

**(B)**    The substance of Class Counsel's application for attorneys' fees, expenses, and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval of the Settlement and Dismissal of the Litigation with Prejudice.

**(C)**    Attorneys' fees and costs checks will be mailed to Class Counsel ten (10) days after the time to appeal the Final Approval Order and final judgment has expired.

**3.3    Claims Administrator's Fees and Costs.**

**(A)**    Prior to the Fairness Hearing, Class Counsel will submit a declaration from the Claims Administrator detailing the administration process, as well as the fees and costs of the administration, which shall not exceed Fifteen Thousand Dollars ($15,000.00), in order to obtain payment of the Claims Administrator's fees and costs in connection with this settlement.

**(B)**    The substance of Class Counsel's application for payment of the Claims Administrator's fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for payment of the Claims Administrator's fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval of the Settlement and Dismissal of the Litigation with Prejudice.

**(C)**    Once approved by the Court, the Claims Administrator's fees and costs shall be deducted from the Gross Settlement Amount prior to distribution of any monies to the Class Members and/or Plaintiffs' Counsel. After payment of the Claims Administrator's fees and costs, HRC shall have no additional liability to the Claims Administrator.

4810-7651-8532.5
4846-6811-9685.1

**3.4**   **Service Awards to Named Plaintiffs**.

**(A)**   At the Fairness Hearing, Class Counsel will seek Court approval of Service Awards in the amount of Two Thousand Dollars ($2,000.00) to each of the following Named Plaintiffs in consideration for their services rendered to the Class Members to be paid out of the Gross Settlement Amount: Aviles, Durbin, and Lindor. HRC shall not oppose such application.

**(B)**   The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's Final Approval of the Settlement and Dismissal of the Litigation with Prejudice. If the Court denies all or any Service Awards for any reason, these funds shall revert back to the Net Settlement Fund for calculation of each Class Members' claim amounts.

**3.5**   **Allocation of Net Settlement Fund to Class Members**.

**(A)**   The allocation to Class Members for Settlement Checks will be made from the Net Settlement Fund.

**(B)**   A Class Member's proportionate share of the Net Settlement Fund will be determined by the following formula:

> **(1)**   Each Class Member shall be assigned one point for each week worked as a server at HRC's Times Square location between December 11, 2011, and December 11, 2017. To calculate each Class Member's proportionate share:
>
>> **(a)**   Add all points for Class Members together to obtain the "Total Denominator";
>>
>> **(b)**   Divide the number of points for each Class Member by the Total Denominator to obtain each Class Member's "Portion of the Net Settlement Fund; and
>>
>> **(c)**   Multiply each Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Class Member's Settlement Award
>
> **(2)**   Only those Class Members who timely submit completed Claim Forms will receive a payment from the Net Settlement Fund. Any proportionate shares that are calculated for Class Members who do not timely submit Claim Forms will revert back to HRC.
>
> **(3)**   Class Members who timely submit valid Claim Forms and do not timely submit valid Opt-out Statements will receive settlement

4810-7651-8532.5
4846-6811-9685.1

payments within ten (10) days after the time to appeal the Final
Approval Order and final judgment has expired.

**3.6**    **Tax Characterization of Settlement Payments**.

**(A)**    Payments of attorneys' fees and costs pursuant to Section 4.2 of this
Agreement shall be made without withholding. Plaintiffs' Counsel and the
Named Plaintiffs will receive a Form 1099 for this Payment.

**(B)**    Payment of the Claims Administrator's fees and costs pursuant to Section
4.3 of this Agreement shall be made without withholding. The Claims
Administrator will receive a Form 1099 for this payment.

**(C)**    The Named Plaintiffs' Service Awards pursuant to Section 4.4 of this
Agreement shall not be deemed to be wages and shall be made without
withholding. The Named Plaintiffs will receive a Form 1099 for these
Payments.

**(D)**    Settlement payments to the Class Members from the Net Settlement Fund
shall be treated as back-wage payments and/or wage income subject to W-
2 reporting.

**(E)**    Settlement payments to the Class Members from the Net Settlement Fund
shall be made net of all applicable employment taxes including, without
limitation, all applicable federal, state, and local income tax withholding, and
shall be reported to the Internal Revenue Service and the payee on an IRS
Form W-2. HRC shall be responsible for all applicable employer tax
contributions associated with the such payments.

**(F)**    The Plaintiffs and Class Members acknowledge and agree that they are
solely responsible for all taxes, interest, and penalties due with respect to
any payments received pursuant to this Agreement (other than the portion
of employer taxes). The Plaintiffs and Class Members further acknowledge
and agree that they have not relied upon any advice from HRC, but are
relying on their own judgment and advice of their own counsel in this matter.

**(G)**    The Claims Administrator shall be responsible for making all tax related
calculations required with the payout of the Net Settlement Fund and
reporting to the Internal Revenue Service (and state and local taxing
authorities, where applicable) all payments made pursuant to this
Agreement.

**(H)**    The Plaintiffs and Class Members agree to hold Releasees harmless to the
full extent of any such liabilities, payments, or costs, including taxes,
interest, penalties, and attorneys' fees which may be assessed against or
incurred by Releasees in connection with any payment made to or on behalf
of any Plaintiff or Class Member hereunder. The Plaintiffs and Class

4810-7651-8532.5
4846-6811-9685.1

Members further agree that should any tax liability arise or accrue to any Plaintiff or Class Member under local, state, or federal tax law as a result of any payments made under this Agreement, the Plaintiff and/or Class Member will pay any and all such obligations without seeking indemnity or reimbursement from Releasees, or any increase in his or her Service Payment or allocation of the Net Settlement Fund.

## 4.   RELEASE

### 4.1   Release of Claims.

**(A)**   By operation of the entry of Final Approval of the Settlement and entry of Judgment, and except as to such rights or claims as may be created by this Agreement, each individual Class Member who timely submits an valid Claim Form (and who does not timely submit a valid Opt-out Statement pursuant to this Agreement) fully and forever releases Releasees from any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, incurred in connection with his or her employment with the Hard Rock Cafe located at 1501 Broadway, New York, New York for the period December 11, 2011 through the date on which the Court grants preliminary approval of the settlement which he or she now has, may have, or ever had, including but not limited to, claims for or related to the underpayment of wages and overtime compensation with respect to meal breaks, pre-shift activities and otherwise; unpaid tips, gratuities, benefits, remuneration, or compensation; unpaid spread of hours payments; unpaid uniform maintenance payments; the failure to provide wage notices and wage statements; unpaid event administration fees and service charges; and all other claims that were asserted, or could have been asserted, in the Litigation under any federal, state or local wage and hour laws including, but not limited to, the Fair Labor Standards Act, the New York Labor Law, and any and all rules and regulations issued thereunder through the date on which the Court grants preliminary approval of the settlement. This release includes all claims for damages arising from any such released claims including claims for liquidated damages, penalties, interest, attorneys' fees, expenses, and costs related to such claims.

**(B)**   **Release of Fees and Costs for Settled Matters.**  Class Counsel on behalf of the Class Members, hereby irrevocably and unconditionally releases, acquits, and forever discharges any claim that it may have against HRC or the Releasees for attorneys' fees or costs associated with Class Counsel's representation of the Class Members. Class Counsel further understands and agrees that any fee payment approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses, and costs associated with Class Counsel's representation in the Litigation.

**(C)**   All Plaintiffs and Class Members shall be permanently barred and restrained from bringing, commencing, joining, prosecuting, or asserting

16

any and all released claims incurred in connection with the Class Member's employment with the Hard Rock Cafe located at 1501 Broadway, New York, NY against any of the Releasees in any forum. Named Plaintiffs, Opt-in Plaintiffs, and the Class Members further represent and covenant that they will not join in any such action brought by another individual.

**4.2    Non-Admission of Liability.** The Releasees vigorously deny liability and have agreed to the terms of settlement without, in any way, acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will: (i) provide substantial benefits the Releasees, (ii) avoid the further expense and disruption of HRC's business due to the pendency and expense of litigation, and (iii) put the claims in the Litigation finally to rest. Nothing in this Agreement shall be deemed or used as an admission of liability by the Releasees or as an admission that a class should be certified for any purpose other than settlement purposes.  No findings with respect to any claim or allegation will be made by the Court as part of the approval process.  Moreover, the Final Approval Order and the Notices will state that Court has not found liability or any wrongdoing with respect to the allegations and claims in the Complaint.

**4.3    Communications with the Media**. The Plaintiffs, Class Members, Class Counsel, HRC, and Defendant's Counsel agree that they will not issue or cause to be issued any press release, post, distribution, or any other communication to any press, media representative or outlet, or social media forum including, but not limited to, any electronic, print, or digital medial or social networking sites, information regarding the Litigation, the claims asserted therein, the settlement of the Litigation, or the amount of money paid to resolve the Litigation. If contacted by the press or other forms of media including, but not limited to, any blogs or other social media websites, the Parties and their counsel will state that the Litigation has been resolved to the satisfaction of the Parties. Further, the Plaintiffs, Class Members, and Class Counsel agree that they will not post any information concerning this Agreement on any website or on any other form of advertisement or public information and to the extent that any such information already exists, it will be removed within five (5) days of the mailing of the Settlement Checks by the Claims Administrator pursuant to this Agreement. Nothing herein shall prevent Class Counsel, the Class Administrator, or the Service Award Plaintiffs from communicating with Class Members.

**4.4    Representations and Warranties by Named Plaintiffs.** By signing this Agreement, the Named Plaintiffs each acknowledge and agree that:

**(A)**    He or she has been afforded a reasonable and sufficient period of time for review, for deliberation thereon and for negotiation of the terms thereof, and has been specifically urged by HRC to consult with legal counsel or a representative of his choice, has had the opportunity to do so and has, in fact, done so by consulting with the firms of Virginia and Ambinder LLP, his or her attorneys of record;

**(B)**    He or she has read and understands the terms of this Agreement, all of which have been fully explained to him or her;

**(C)**    He or she has signed this Agreement freely and voluntarily and without

17

duress or coercion and with full knowledge of its significance and consequences and of the rights relinquished, surrendered, released and discharged in this Agreement;

**(D)** The only consideration for signing this Agreement are the terms stated and no other promise, agreement or representation of any kind has been made by any person or entity whatsoever to cause him or her to sign this Agreement; and

**(E)** He or she has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation.

## 5.    INTERPRETATION AND ENFORCEMENT

**5.1    Cooperation Among the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2    No Assignment.** Class Counsel and Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.3    Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter and terms stated, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.4    Binding Effect.** This Agreement shall be binding upon the Parties, once approved by the Court and, with respect to the Plaintiffs, the Opt-in Plaintiffs, and all Class Members.

**5.5    Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.6    Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7    Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are

4810-7651-8532.5
4846-6811-9685.1

not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

**5.8    Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**5.9    Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth in this Agreement, in which case such federal law shall govern.

**5.10    Continuing Jurisdiction.** The Court shall retain exclusive jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**5.11    Waivers, Modifications, or Amendments to Be in Writing.**   No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12    Publicity.** The Class Members and counsel for the Parties agree that they will respond to any press inquiries with the response that "the parties have resolved their differences to their mutual satisfaction" or words to that effect.

**5.13    When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution by HRC's authorized representatives, the Plaintiffs, and Class Counsel. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.14    Facsimile and Email Signatures.** Any Party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other Party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

**Signatures to follow on next page.**

4810-7651-8532.5
4846-6811-9685.1

_____

Joseph Sinclair

Date: _____


 /s/ LLOYD AMBINDER_____
Virginia & Ambinder LLP
Plaintiffs' Counsel and on behalf of
Plaintiffs Timothy Aviles, Bradley
Durbin, Stanla Lindor, Hakim
Muhammad and Byron Meyer
By: Lloyd R. Ambinder, Esq.

Date: January 14, 2019

_____
Hard Rock Cafe International (USA),
Inc.
By: *Brian Alexander*
Its: *Vice President of Business Affairs*

Date: *1.14.19* _____

20